IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERRY ALAN MCCLURE, #70442, | ) Civil Action No. 3:07-902-GRA-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| SHERIFF J. AL CANNON; AND MITCH LUCAS, WARDEN, | ) |
| Defendants. | ) |

Plaintiff filed this action, pro se, on April 4, 2007.[1] At the time of the alleged events, Plaintiff was a pre-trial detainee at the Charleston County Detention Center ("CCDC"). He is currently incarcerated at the Allendale Correctional Institution of the South Carolina Department of Corrections. Defendants are Charleston County Sheriff Al Cannon ("Cannon") and CCDC Warden or Administrator Mitch Lucas ("Lucas"). On February 7, 2008, the Honorable G. Ross Anderson, Jr., United States District Judge, granted Defendants' July 30, 2007 motion to dismiss[2] as to Plaintiff's claims for injunctive relief and denied Plaintiff's August 1, 2007 motion for summary judgment.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] Defendants argued that their motion to dismiss should be granted because Plaintiff failed to exhaust his administrative remedies and his claims were moot as he was no longer incarcerated at the CCDC. The undersigned recommended granting Defendants' motion to dismiss as to Plaintiff's claims for injunctive relief and denying Defendants' motion to dismiss as to Plaintiff's claims for monetary damages. Defendants did not file any objections to the report and recommendation.

On June 2, 2008, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on June 9, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on July 1, 2008.

**DISCUSSION**

While at the CCDC, Plaintiff was segregated from the general population.[3] Plaintiff alleges that Defendants violated his First Amendment rights because he was denied access to reading materials. He claims that his access to the courts was obstructed because the jail blocked him from obtaining legal research sent to him by persons outside the jail and he was denied magazines and

---

[3]On April 2, 2005, Plaintiff requested to be removed from the general population and placed on protective custody status. On August 1, 2005, he was found guilty of assault on a member of the CCDC staff and given thirty days disciplinary segregation. He was subsequently found guilty of a November 10, 2005 assault on another inmate and given an additional ten days detention time. Lucas states that upon the expiration of his disciplinary detention sentence, it was determined that Plaintiff should remain in administrative segregation on Unit 1-A based on the standard practice of the CCDC when dealing with violent and unruly detainees. He states that he felt the best way to maintain control, security, and order over the CCDC was to place Plaintiff in Unit 1-A. Lucas Aff., Paras. 4-11.

In his memorandum in opposition to summary judgment, Plaintiff appears to challenge his disciplinary convictions and placement in administrative segregation. These claims are not properly before the court in this action. See Complaint. Further, Plaintiff appears to have raised some of these issues in another one of his cases. See Civil Action Number 3:07-2408-GRA-JRM. Additionally, as Plaintiff has not shown that he successfully attacked any disciplinary hearing convictions, his allegations concerning his disciplinary proceedings and the outcome of those proceedings appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck).

books sent to him from publishers. Plaintiff requests monetary damages[4] of $5,000 for restriction of mail and $5,000 for restriction of reading materials. Complaint at 5. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff has offered no evidence to support his claim for monetary damages resulting from Defendants' alleged restriction of his reading materials, and (2) Plaintiff has offered no evidence to support his claim for monetary damages resulting from Defendants' alleged restriction of incoming or outgoing mail.

### 1.     Reading Material/Publications

Plaintiff alleges that he was not allowed access to novels from the library in the same manner as detainees who were not in administrative segregation. He also claims that he did not receive a subscription to Reader's Digest which his mother sent to him. Defendants contend that Plaintiff has offered no evidence to support his claim for monetary damages resulting from Defendants' alleged restriction of his reading materials. Defendants contend that Plaintiff fails to show that they violated his constitutional rights. They provide that Plaintiff was unable to participate in a specific library lending program because he was confined to Unit 1-A (CCDC's disciplinary/administrative segregation unit) and that detainees in this unit are unable to enjoy the same activities as inmates in the general population due to security and institutional concerns for safety and control. Defendants contend that the Reader's Digest renewal form attached to the Complaint[5] does not show that

---

[4]As noted above, Plaintiff's claims for injunctive relief have been dismissed.

[5]The undersigned, discussing the "proof" that Plaintiff argued supported his August 2007 motion for summary judgment noted:
   Attached to Plaintiff's claim is a form addressed to his mother which appears to be
   a request that she renew her own subscription as well as a gift subscription to Plaintiff
   for "Reader's Digest." Plaintiff claims that this is "proof" that he was not allowed to
                                                                           (continued...)

Defendants refused to allow Plaintiff to receive this magazine or that his constitutional rights were violated. Defendants also contend that Plaintiff's claims amount to nothing more than a de minimis injury from a restriction on reading materials.[6]

Plaintiff retains certain First Amendment rights, including the right to receive written publications. <u>Thornburgh v. Abbott</u>, 490 U.S. 401. 407-08 (1989). However, prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 87 (1987) (internal quotations omitted). In order to determine whether the regulation relied on by the defendants is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation

---

[5](...continued)
receive this magazine. It is unclear from the form, however, whether the subscription was actually renewed. Further, nothing on the form shows that Defendants refused to allow Plaintiff to receive this magazine or that his constitutional rights were violated.

Doc. 32 at n. 2. In his objections to the report and recommendation, Plaintiff submitted a copy of purported correspondence between his mother and Reader's Digest in which a customer service representative noted on February 23, 2007 that previous issues had been returned as undeliverable by the post office, Reader's Digest was extending the gift subscription by the number of issues that were missed, the address on the gift subscription was changed to Plaintiff's CCDC address, and to allow six to eight weeks for the change to appear on the address label. Doc. 34, attachment.

[6]To the extent that Plaintiff is asserting a Fourteenth Amendment claim, his claim fails as he has not shown anything more than de minimis injury and a de minimis injury does not violate the Fourteenth Amendment. <u>See</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 1977) (holding that there is a de minimis level of imposition with which the Constitution is not concerned); <u>Riley v. Dorton</u>, 115 F.3d 1159, 1166 (4th Cir.1997).

of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Turner, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir.1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir.1993).

The CCDC has restrictions on the ways in which detainees in administrative segregation receive novels. See Defendants' Motion for Summary Judgment, Ex. 10 (CCDC Policy and Procedure Manual Classification Number 4311.1). Plaintiff has pointed to no CCDC policy restricting magazine subscriptions.[7] Lucas states that the revocation of privileges (to those detainees in Unit 1-A) "was necessary in an attempt to maintain control and order and was in the best interest of security." Lucas Aff., Para. 12. In response to a grievance, Plaintiff was informed that he could purchase novels from the canteen. See copies of grievances attached to Complaint. Plaintiff has not met his burden of showing that restrictions on his reading materials was unconstitutional.

At most, Plaintiff has shown that an employee of the CCDC violated CCDC rules by returning his subscription or by failing to provide him a novel from the library. Allegations that CCDC employees have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process

---

[7] He submitted a copy of a grievance in which an unidentified CCDC employee stated that only newspaper subscriptions were allowed at the CCDC. There is no indication, however, that the response was written by either of the defendants to this action.

issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Further, Plaintiff has not shown that Defendants were responsible for the alleged actions or that they are liable on a theory of supervisory liability (see discussion below).

### 2. **Access to the Courts**

Plaintiff appears to claim that his access to the courts was violated because his incoming mail which had "legal research" from friends or family was censored and held. Defendants contend that Plaintiff fails to show that his constitutional rights were violated because he has not shown that he suffered any injury. They contend that CCDC inmate rules provide that incoming mail is inspected for contraband and that mail from the courts, attorneys, and probation/parole officers is to be opened in the detainee's presence.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal

assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show that his access to the courts has been violated as he has not shown any actual injury such as the late filing of a court document or the dismissal of an otherwise meritorious claim resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra. Plaintiff does not dispute that he had a public defender to represent him on his criminal charges. In his objections (Doc. 34) to the undersigned's December 11, 2007 report and recommendation, Plaintiff claims that his habeas case (Civil Action Number 3:07-471-GRA-JRM) in this Court was dismissed because he did not cite proper case law (which he claims was caused by Defendants' restrictions on his mail). Review of Plaintiff's habeas case (which was dismissed without prejudice), however, reveals that the undersigned recommended dismissing the case because the proper vehicle for Plaintiff's conditions of confinement claims was an action under § 1983, not a habeas action; the Court could not interfere with the ongoing prosecution of Plaintiff in state court; and Plaintiff's excessive bail claim was currently on appeal in state court. Judge Anderson, in his April 26, 2007 order, adopted the report and recommendation and ordered that the petition be dismissed. Although Judge Anderson noted that Plaintiff did not cite the proper law in his objections to the report and recommendation, there is no indication that Plaintiff's citation of incorrect law was the reason for dismissing the action.

Plaintiff has presented nothing to show that mail sent to him from friends and family is "legal mail" such that it cannot be inspected for contraband prior to being sent to him. Prison officials may open mail from an attorney to a prisoner in the prisoner's presence in order to protect against contraband. Wolff v. McDonnell, 418 U.S. 539 (1974); see Crowe v. Leeke, 550 F.2d 184 (4th Cir.

1977). No constitutional violation arises if mail which is not properly marked (that the legal sender is specifically identified and the mail is marked confidential) is opened outside the inmate's presence. United States v. Stotts, 925 F.2d 83 (4th Cir. 1991).

### 3. Supervisory Liability

Alternatively, it is recommended that this action be dismissed sua sponte because Defendants cannot be held liable on a theory of supervisory liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Cannon or Lucas was personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendant Cannon and/or Lucas is liable on a theory of respondeat superior or supervisory liability.

### CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary

judgment (Doc. 49) be **granted**.

          Respectfully submitted,

          Joseph R. McCrorey
          United States Magistrate Judge

January 21, 2009
Columbia, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).